**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
LINDA ALBANI et al.,

                              Plaintiffs,                    **MEMORANDUM**
                                                            **AND ORDER**
             - against -
                                                            CV 03-3897 (JO)
MAFFUCCI STORAGE CORP. et al.,
                              Defendants.
---------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

        Plaintiffs Linda and Richard Albani claim that they hired "Maffucci Bekins" to move

their belongings from their New York City apartment to a storage facility in North Amityville,

New York, and thence several months later to their new home in Bradenton, Florida.  The storage

facility suffered a fire, and the Albanis' belongings were damaged.  The Albanis thereupon sued

defendants Maffucci Storage Corporation ("Maffucci") as well as The Bekins Company, Bekins

Van Lines Company, Bekins Van Lines, LLC, and Bekins Worldwide Solutions, Inc.

(collectively "Bekins"), seeking to recover damages, legal fees and expenses based on claims of

negligence, misrepresentation, and breach of duty to act in good faith.[1]  Each party to some

extent seeks summary judgment in its favor.  The plaintiffs assert the record suffices to award

them full relief without a trial, DE 98; Maffucci seeks to limit their potential liability to a

contractually specified amount of $50,000, DE 74; and Bekins asserts that there is no basis for

holding it liable, DE 80.  I have reviewed the parties' submissions and heard oral argument on

July 19, 2005, at which time I reserved decision.  For the reasons set forth below, I now deny the

Albanis' motion, deny Maffucci's motion, and grant summary judgment in favor of Bekins.

--------------------------------------------------

[1]   The Albanis also initially sued Paul Levine, but did not name him in their Amended
Complaint, Docket Entry ("DE") 16, and they have settled their claims against Maffucci's
employee Judd Levine.  DE 54.  Maffucci and Bekins are thus the only remaining defendants.

I.    Background

A.    The Parties' Submissions

The parties have submitted a great many briefs, affidavits, and other papers in support of the three motions now before me, all of which I have considered.  To ensure a clear record, I list them all below.

1.    Plaintiffs' Motion

The parties submitted the following documents in connection with the Albanis' motion for summary judgment.

| DE | Description |
|----|-------------|
| 48 | Plaintiffs' Rule 56.1 Statement to Defendants the Bekins Company, Bekins Van Lines, LLC, and Bekins Worldwide Solutions, Inc. dated October 14, 2004; |
| 51 | Defendants the Bekins Company, Bekins Van Lines Co., Bekins Van Lines LLC, and Bekins Worldwide Solutions, Inc.'s Rule 56.1 Counter Statement dated October 21, 2004; |
| 59 | Memorandum of Law in Support of  Plaintiff[s'] Motion for Summary Judgment dated December 8, 2004 ("Albani Memo."); |
| 61 | Affirmation [in Support of the Albanis by Jessica A. Stopek] dated January 6, 2005; |
| 62 | Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and in Opposition to the Motion for Summary Judgment by Defendants the Bekins Company, Bekins Van Lines Company, Bekins Van Lines, LLC and Bekins Worldwide Solutions, Inc. dated January 7, 2005 ("Albani Reply Memo."); |
| 63 | Affirmation [in support of the Albanis] by Jessica A. Stopek dated January 6, 2005, along with Exhibits A-B; |
| 64 | Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendant Maffucci Storage Corporation A/K/A Maffucci Bekins Moving and Storage Co. Motion for |

Summary Judgment Seeking to Limit Plaintiffs' Damages to $50,000 dated January 7, 2005;

69    Maffucci's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment dated December 23, 2004;

70    Certification of Andrew Karonis in Opposition to Plaintiffs' Motion for Summary Judgment dated December 23, 2004;

71    Affidavit of Judd Levine dated December 22, 2004 ("Judd Levine Aff.");

72    [Certification of Andrew Karonis Exhibits A-G];

78    Affidavit in Opposition to Plaintiff's Motion for Summary Judgment by Randall K. Roonan ("Roonan Aff.") dated December 22, 2004, along with Exhibits A-G (each referred to as "Roonan Aff. Ex. __" except the Bekins Agency Agreement included in Exhibit A, referred to as "Agency Agreement " );

79    Memorandum of Law [by Bekins] in Opposition to Plaintiffs' Motion for Summary Judgment dated December 22, 2004;

98    Notice of [Albanis'] Motion;

99    Affidavit [of Linda Albani and Richard Albani] In Support Of Plaintiffs' Motion For Summary Judgment ("Albani Aff.")[2]; and

100    Affirmation of Jessica I. Stopek ("Stopek Aff.").

2.    <u>Maffucci's Motion</u>

The parties submitted the following documents in connection with the Maffucci's' motion for summary judgment.

<u>DE</u>    <u>Description</u>

40    Maffucci's Civil Rule 56.1 Statement dated September 30, 2004;

---

[2]  For reasons neither clear nor important, the exhibits to the Albanis' joint affidavit were filed separately as DE 104 through DE 109, often with a single exhibit broken up between two separate docket entries.  For ease of reference, I cite those exhibits as "Albani Aff. Ex __." Likewise the exhibits to Ms. Stopek's affirmation (all of which were in any event docketed items that need not have been resubmitted as exhibits) were scattered across DE 109 through DE 111.

41      Maffucci's Response to Plaintiff's Additional Statement to Counter Statement of Facts Pursuant to Rule 56.1;

47      Plaintiffs' Rule 56.1 Counter Statement to Defendant Maffucci Storage Corporation A/K/A Maffucci Bekins Moving and Storage Co.'s 56.1 Statement and Plaintiffs' Rule 56.1 Statement dated September October 14, 2004 ("Albani Rule 56.1 Statement");

60      Reply Memorandum of Law in Opposition to Defendant Maffucci Bekins' Motion for Summary Judgment Seeking to Limit Plaintiffs' Damages to [$]50,000 and in Further Support of Plaintiffs' Motion for Summary Judgment dated December 22, 2004;

74      Notice of Motion [by Maffucci] dated December 7, 2004;

75      Memorandum of Law in Support of Maffucci's Motion for Partial Summary Judgment dated December 7, 2004 ("Maffucci Memo.");

76      Certification of Andrew Karonis in Support of Defendant Maffucci's Motion for Partial Summary Judgment dated December 7, 2004 ("Karonis Cert."), along with Exhibit A, Exhibit B (Deposition of Linda Albani dated August 9. 2004,"L. Albani Dep. 1 "), Exhibit B, Exhibit C (Deposition of Linda Albani dated August 10, 2004,"L. Albani Dep. 2 "), Exhibits D-J, Exhibit K (Deposition of Richard Albani dated August 10, 2004, "R. Albani Dep.") & Exhibits L-P;

84      Maffucci's Memorandum of Law in Reply to Plaintiffs' Opposition and in Further Support of Maffucci's Motion for Summary Judgment dated January 11, 2005;

85      Certification of Andrew Karonis in Reply to Plaintiffs' Opposition to Maffucci's Motion for Partial Summary Judgment dated January 10, 2005; and

95      Affirmation of Jessica I. Stopek dated December 22, 2004 ("Stopek Aff. 2")[3].

3.     <u>Bekins' Motion</u>:

The parties submitted the following documents in connection with Bekins' motion for summary judgment.

---

[3] The exhibits to this document, which filed were separately as DE 96 and DE 97, are referred to as "Stopek Aff. 2 Ex __."

| DE | Description |
|----|-------------|
| 49 | Plaintiffs' Rule 56.1 Counter Statement to Defendants the Bekins Company, Bekins Van Lines Co., Bekins Van Lines LLC and Bekins Worldwide Solutions, Inc. Rule 56.1 Statement dated October 21, 2004; |
| 50 | Movant the Bekins Company, Bekins Van Lines Co., Bekins Van Lines LLC and Bekins Worldwide Solutions, Inc. Rule 56.1 Statement dated October 14, 2004; |
| 65 | Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and in Opposition to the Motion for Summary Judgment by Defendants the Bekins Company, Bekins Van Lines Company, Bekins Van Lines, LLC and Bekins Worldwide Solutions, Inc., dated December 23, 2004; |
| 80 | Notice of [Bekins'] Motion for Summary Judgment dated December 9, 2004; |
| 81 | Affidavit [of Randall K. Roonan] in Support of Motion for Summary Judgment dated December 7, 2004; |
| 82 | Memorandum of Law in Support of [Bekins'] Motion for Summary Judgment dated December 6, 2004 ("Bekins Memo."); and |
| 83 | Reply Memorandum of Law in Support of Defendants, the Bekins Company, Bekins Van Lines Co., Bekin Van Lines, LLC. and Bekins Worldwide Solutions, Inc.'s Motion for Summary [Judgment] and in Further Opposition to Plaintiffs' Motion for Summary Judgment dated January 6, 2005. |

B.    The Albanis' Initial Contact With Maffucci

Linda Albani, also known as Linda Hudes, was a composer of music for the Big Apple Circus for 20 years and for Ringling Brothers and Barnum and Bailey Circus for three years. Her husband Richard Albani was the Music Director for the Big Apple Circus. The couple also provided music-related services to several other clients over the years. At some point the Albanis decided to leave the Circus, sell their apartment in New York, and move to Florida to focus on recording their compositions, teaching, and otherwise making use of their musical

background. They planned to rent a home in Florida while their Brendenton home and studio were being completed. Albani Aff. ¶ 3.

Accordingly, the Albanis' sought assistance with the moving and storage of their belongings. In early December 2001, they contacted Maffucci, an entity that the Albanis have insisted throughout this litigation in referring to as "Maffucci Bekins." *Id*. As the caption of the case makes clear, there is no such entity, although it is a matter of considerable dispute with respect to Bekins' motion as to whether, and to what extent, Bekins bears responsibility for the words and conduct of Maffucci's officers and employees.

The Albanis claim that some time around December 2001, they had seen an advertisement in the Yellow Pages touting "Maffucci Bekins" as "the largest household goods agent of Bekins in the U.S." They also claim to have seen an advertisement on an Internet web site for "Maffucci Moving and Storage Corp. (Bekins Van Lines) - Largest household goods agent for Bekins in the U.S." *Id*. ¶ 4 & Ex. A. Maffucci's president Paul Levine testified that he did not authorize this web site listing. Stopek Aff. 2 Ex. A at 82 (testimony of Paul Levine).

On December 14, 2001, Judd Levine visited the Albanis' apartment. While there, he gave the defendants a business card with the Bekins logo that described him as Vice President of "Maffucci Bekins – Maffucci Moving & Storage Co., Inc." He examined the apartment and created an inventory of the Albanis' possessions, which included an extensive music library, instruments, equipment, photo albums, furniture, and costumes. He also prepared two separate forms to which he attached copies of the inventory: one, entitled "Probable Cost of Services," bore the name "Maffucci Storage Corp." and made no reference to Bekins; the other bore the

Bekins logo and referred to transportation from storage to Sarasota, Florida. *See* Albani Aff. ¶ 10 & Ex. C.

Judd Levine also gave the Albanis two other documents: a brochure "Prepared by the Federal Highway Administration" and "Furnished By Bekins" entitled "Your Rights and Responsibilities When You Move;" and a brochure bearing the Bekins logo entitled "Valuation Coverage." *See id.* ¶ 7 & Ex. B.

The document entitled "Your Rights and Responsibilities When You Move" explains that all moving companies are required to assume liability for the value of the goods they transport, but that consumers can choose among four different levels of liability, each at a different cost: Released Value, Declared Value, Lump Sum Value, and Full Value Protection. The first option costs the consumer nothing, but it limits the mover's liability to sixty cents per pound per article. The brochure advises consumers to "think carefully" before agreeing to such minimal protection, and notes that a consumer must explicitly agree to it in writing. *See id.* Ex. B. The Declared Value option likewise ties the mover's maximum liability to the weight of the shipment, but at a significantly higher rate of $1.25 per pound. Unlike Released Value, Declared Value offers full liability on a single item. This option, which costs up to seven dollars per thousand dollars of assumed liability, is the default – a consumer who does not affirmatively select one of the four options in writing is assumed to have selected this one. *Id.* The Lump Sum Value option is similar in cost and coverage to Declared Value with one difference: the maximum liability is set by the consumer's declared valuation of the shipment rather than by the total weight. The brochure advises consumers to declare "unusually expensive" items, and notes that consumers "must make this declaration in writing on the bill of lading." *Id.* Full Value Protection provides

the maximum protection of repair, replacement, or cash settlement. This option is the most expensive; a mover may charge up to $8.50 per thousand dollars of assumed liability. *Id*.

After describing the four liability options, the brochure goes on to warn that "movers are permitted to limit their liability for loss or damage to articles of extraordinary value [more than $100 per pound], unless [the consumer] specifically list[s] these articles on the shipping documents.... Ask your mover for a complete explanation of this limitation before you move. It is your responsibility to study this provision carefully and to make necessary decisions." *Id*.

The document also states that the liability options are not "insurance," which is governed by state law. It continues to advise some movers may offer additional optional insurance, regulated by state law, to consumers who choose the minimal Released Value liability limitation. A mover who sells such insurance to a consumer is required to issue the policy and provide the consumer with a copy of the policy or other written record of the purchase at the time of purchase; a mover that fails to comply with this requirement is "fully liable for any claim for loss or damage attributed to its negligence. *Id*.

The document entitled "Valuation Coverage" states that "valuation is not insurance" and that "valuation defines liability." It offers two valuation options: basic liability, equivalent to the minimal Released Value option described above, and an equivalent of the Full Value Protection option described above, which the Bekins' brochure labels the "For All Its Worth" or "FAIW" option. Under this option, consumers can extend the mover's liability to the full declared value of the shipment, and can reduce the cost of the option by agreeing to deductibles of $250 or $500. The document includes a table that shows the cost of the FAIW at various combinations of deductibles and shipment valuations up to $250,000. For example, for a shipment valued by the

consumer at $50,000 with a deductible of $500 (the amounts the Albanis later specified in writing), the cost of FAIW would be $210. Below the table is a notation that "[t]he charge for valuation exceeding $250,000 will be the applicable charge for $250,000 of declared value plus $6.00 for each $1,000 of valuation in excess of $250,000." *Id*. Thus, assuming a deductible of $500, the cost of FAIW liability for a shipment valued at $952,000 (the amount of damages the Albanis now claim in this litigation) would be $5,312.

The Albanis claim that based on the advertisements and the documents Judd Levine provided, they believed they were hiring a company called "Maffucci Bekins" to handle all of the moving and storage they required. They claim that they were never advised that "Maffucci Bekins" was actually two separate entities – Maffucci and Bekins – or that, as explained later, Maffucci was responsible for the move to a storage facility and that Bekins was responsible only for the interstate shipment to Florida once the Albanis were ready to remove their possessions out of storage. *Id*. ¶ 9.

The Albanis further claim that they advised Judd Levine that they were professional musicians, that their clients relied upon their extensive musical collection, and that they were therefore concerned that the move be handled with "the utmost of care and delicacy" because the musical scores and arrangement were valuable. *Id*. ¶¶ 10-13. They allege that Judd Levine told them that "Maffucci Bekins" specialized in moving and storing "musician's equipment and valuable business papers." *Id*. ¶¶ 14-15. They also claim to have advised Levine that they lacked homeowners's insurance, a matter that they say Levine told them he typically asked in making his recommendations. *Id*. ¶ 20.

The Albanis go on to attribute to Judd Levine a number of assurances seemingly at odds with the careful limitations in the various documents associated with their move. They say he assured them that "any slight loss or damage that will occur during the course of this move and storage, would be more than covered by $50,000 - Full Replacement Value," that this option would cover "slight damage, i.e., dirt, scratches, dropped furniture, that might occur, and that 'Maffucci Bekins' would be liable for any additional or substantial loss." *Id*. ¶ 16. He also allegedly told them that their business records would be stored in a part of the storage facility separate from their personal belongings. He is further alleged to have told the Albanis that because the storage facility was protected by cameras and alarms, the "$50,000 - Full Replacement Value" coverage would be sufficient; the Albanis claim that Judd Levine advised that they should purchase this "insurance" on the day of their move, despite his awareness that their belongings were worth rather more than $50,000. *Id*. ¶¶ 16-18; *see also* L. Albani Dep. 1 at 21-22, 27 & 56; L. Albani Dep. 2 at 34; R. Albani Dep. at 13, 16 & 17-20.

Judd Levine claims that he did not recommend a specific amount of insurance and that there was no discussion of the value of plaintiffs' belongings. He stated that if a customer does not know the value of their goods, he advises customers to check their homeowners policy, as the policy will contain the value of their belongings; if customers do not have such insurance, he advises them to check their receipts. He stated that it is his understanding that homeowners insurance will cover storage. *See* Judd Levine Aff. ¶¶ 7-9, 14-15; Albani Aff. Ex. E at 23, 27-32 (testimony of Judd Levine); Stopek Aff. 2, Ex. A at 40 (testimony of Paul Levine explaining homeowners insurance coverage).

C.    Events From The December 2001 Visit To Moving Day, June 26, 2002

On December 20, 2001, Judd Levine sent plaintiffs a follow-up letter, which extolled the virtues of "Maffucci Storage and Bekins Van Lines."  The letter was written below a letterhead reading "Bekins Agent – Maffucci Storage Corp." and Levine signed as the "Sales Representative" for "Maffucci Bekins."  Albani Aff. Ex. B. Several months later, on May 22, 2002, Judd Levine again visited the Albanis' apartment for further inspection and to assist them in completing various forms.  Linda Albani subsequently used one such form to purchase packing materials; the form bore the heading, "Bekins – Maffucci Storage Corp." *Id*. ¶¶ 23-24 & Ex. F.

Linda Albani testified that she telephoned Judd Levine on June 19, 2002, and told him that she and her husband had decided to insure their goods for $50,000, with a $500 deductible. Linda Albani Dep. 1 at 61.  Accordingly, on June 25, 2002, she wrote "$50,000 Replacement Value" on a Bill of Lading that bears the label "Maffucci Storage Corp."  The Bill of Lading provides notice that "the shipper signing this contract must insert in the space above, in his own handwriting, his declaration of the actual value of the shipment ...."  Albani Aff. Ex. F.  Linda Albani claims she declared $50,000 upon Judd Levine's instructions; he denies that allegation and claims that he never tells a client how to value a shipment.  *Id*. ¶ 28 & Ex. E at 22-24, 30, 40-41 (testimony of Judd Levine).

The Bill of Lading had a second page that recited various contractual terms and conditions.  Among them, Section 5 provides that "[n]o carrier hereunder will carry or be liable in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classifications or tariffs unless a special agreement to do so and a

stipulated value of the articles are endorsed hereon."  The Albanis claim that neither Judd Levine nor any other "Maffucci Bekins" employee told them to prepare a document listing any articles of extraordinary value.  They further claim that they saw only the first page of the two-page document, and in particular deny having seen, or been aware of the existence of, the second page that sets forth the "Contract Terms and Conditions."  Indeed, the Albanis swear that the first page of the document bears no indication that it has a second page – notwithstanding the explicit reference in the first paragraph of text on the first page to "the conditions on back hereof, which are hereby agreed to by shipper and accepted for himself and his assigns."  *Id*. ¶¶ 28-30 & Ex. H.

The Albanis' property was insured for the sum of $50,000 under a policy issued by the Chubb Group of Insurance Companies to Maffucci Storage as carrier and warehouseman.  Albani Aff. Ex. G.  The Albanis claim that they repeatedly made oral requests for copies of the policy, but never received it until it was disclosed in discovery in this litigation.  *Id*. ¶ 26.

      D.    <u>The September 5, 2002 Fire</u>

In a letter dated September 16, 2002, and addressed to "Our Valued Customers," Paul Levine advised that a fire "broke out in our yard" on September 5, 2002 and "spread to our storage warehouse."  The letter was written on stationery that bore the legend "Bekins Agent" at the top, with "Maffucci Storage Corp." immediately below.  The letter makes two references by name to the business on behalf of which it was written: a nod to the difficulty of the situation for "Maffucci," and Levine's observation he had spent his entire adult life working at "Maffucci"  *Id*. Ex. J.

According to a police report, which named as the victim of the fire "Maffucci Storage," the fire appeared to have been "intentionally set ... by person(s) unknown" in a trailer that,

according to two warehouse workers, had been parked "for the past two or three months" against the rear of the warehouse. Albani Aff. Ex. K. Paul Levine, whom the report identified as President of "Maffucci Storage" reportedly provided the police investigator with the names of two recently terminated employees and said that "there had been words exchanged when they were let go." *Id.* He believes the fire started on the warehouse's loading dock, noting that pallets of certain items that were near the loading dock suffered fire damage, and he disputes that the fire was the result of arson, noting that no one has been arrested or prosecuted in connection with the fire. Stopek Aff. 2, Ex. A at 48-50 (testimony of Paul Levine). The fire marshal's report opined that "[e]xtinguishment [of the fire] was difficult as a result of the method of tightly packed storage with no flue space for fire sprinkler flow penetration and inadequate spacing to prevent horizontal fire spread." Albani Aff. Ex. L.[4]

After initially offering a lower amount, Maffucci's insurer eventually offered the Albanis the full $50,000 liability coverage that the Albanis had paid for when they moved. The Albanis rejected that offer. *Id.* ¶¶ 58-59. They claim that as a result of the fire, they sustained damages in excess of $962,151. *See id.* ¶¶ 71-75 & Ex. P. Their damages claim rests to some extent on the opinions of individuals whom they describe as having knowledge of the value of their music; those individuals testified that they did not know the value of Linda Albani's music, *see* Karonis

---

[4] The Albanis would also have me rely on the fact that the fire marshal filed several accusations in state court against Maffucci alleging safety violations. *Id.*; *see also* DE 61, Ex. A (summonses). The dispositions of those accusations are not in the record, and therefore they add no relevant information to the factual record against which I must assess the instant motions. I cannot assume that the allegations were true simply because they were made. Moreover, because the legal standard governing summary judgment motions turns on the evidence on which a jury might render a verdict, the fact that accusations are not evidence further compels me to ignore the accusations in deciding the pending motions.

Cert. Ex. O at 27-32 (testimony of expert Norman P. Chesky) & Ex. P at 22 (testimony of expert Allan S. Colin), and one testified that Richard Albani's music, depending on how it was marketed, "would do pretty well." *Id.* at 22.

     E.     The Relationship Between Maffucci And Bekins

The Albanis have insisted throughout this litigation on referring to a single entity that they call "Maffucci Bekins." Paul Levine testified that there is no such company, explaining that Maffucci is Bekins' authorized agent for interstate moves, and that Bekins was not involved with the storage of the Albanis' goods. Stopek Aff. 2, Ex. A at 66, 70 & 73 (testimony of Paul Levine). In addition, and in connection with this motion, Scott Ogden ("Ogden"), who is Assistant Secretary and General Counsel for Bekins, stated that there is no business entity by the name of "Maffucci Bekins," there was an agency agreement between Maffucci and Bekins, and that to his knowledge Bekins did not authorize anyone to represent that an entity named "Maffucci Bekins" exists. Roonin Aff. Ex. A (Ogden Aff. dated Dec. 16, 2004) ¶¶ 1-5. Ogden further stated that Bekins is in the business of interstate moves only, not intrastate moves, and that Bekins is not licensed to store or warehouse goods in New York. *Id.* (Ogden Aff. dated Nov. 16, 2004) ¶¶ 1-2.

Ogden also provided a copy of the Agency Agreement between Maffucci and Bekins. It defines the their intended relationship as "an agency relationship whereby Agent [Maffucci] will represent Carrier [Bekins] ... in connection with Carrier's interstate and foreign operations." Agency Agreement at 1. The Agency Agreement's General Provisions further specify the relationship as "one of principal/agent and not employer/employee;" and explicitly rejects other characterizations: "the parties are not and shall not be deemed to be joint employers, joint

venturers or partners, and any and all employees or other help used by Agent in performing services shall not be deemed to be employees of Carrier." *Id*. at 5.

Paul Levine further explained his view of the relationship, stating that his son Judd Levine wears "two hats" in those situations where customers such as the Albanis seek local storage and an interstate move. In this case, according to Paul Levine, his son Judd Levine represented Maffucci for purposes of the local transportation and represented Bekins for purposes of the interstate shipment. Paul Levine also testified that Bekins has no ownership interest in Maffucci's storage facility and was not involved in the fire or the local transportation and storage of the Albanis' goods. Stopek Aff. 2 Ex. A at 69, 73. The Albanis plainly take a contrary view, alleging that Judd Levine referred to "Maffucci Bekins" in his dealings with them and citing documents that bear the names of both Maffucci and Bekins or even "Maffucci Bekins." *See e.g.,* Albani Aff. ¶¶ 7-9, 21 & Exs. B & F.

II.    Discussion

A.    The Applicable Law

I begin the discussion with legal principals that apply to all of the pending motions. Principles that are relevant only to a single party's motion are discussed in the section below addressing that motion.

1.    Summary Judgment Standard

A judge deciding motions for summary judgment does not "'weigh the evidence and resolve factual issues'" but instead "'determine[s] as a threshold matter whether there are genuine issues of material fact to be tried.'" *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989));

*see* Fed. R. Civ. P. 56(c). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F. 3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Id*. (quoting same). However, "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assoc. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citations omitted). "The trial court's function at [the summary judgment] stage is to identify issues to be tried, not decide them." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

2.    Choice Of Law

The court's jurisdiction over this case arises from the parties' diversity of citizenship rather than on any claim predicated on federal law. As a result, generally speaking, I would have to look to the choice of law rules of the forum state of New York to determine which jurisdiction's substantive law to apply. *HSA Residential Mortgage Services of Texas v. Casuccio*, 350 F. Supp. 2d 352, 361-62 (E.D.N.Y. 2003) (citations omitted). I need not engage in such analysis because the parties agree I should apply the substantive law of New York (with the exception of one argument under federal law that I address and reject below in connection with Bekins' motion). *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995).

B.    The Albanis' Motion

The Albanis claim that "Maffucci Bekins" was grossly negligent by causing, creating, or permitting the alleged violations that caused the fire to exist. They also claim that "Maffucci Bekins" failed to provide them with the opportunity to insure their goods for a higher amount.

-16-

Finally, they claim "Maffucci Bekins" is liable to them because "it" failed to provide them with a copy of the insurance policy.  Albani Memo. at 6-10, 14.

Essential to these claims are disputed assertions of material fact.  The misrepresentation claims are based on statements attributed to Judd Levine – concerning the services and coverage that the defendants would provide – that he denies making.  The negligence claim is based on disputed factual issues regarding the cause of the fire and the cause of the ensuing damage to the Albanis' property.  Moreover, to the extent that the fire may have been the result of arson, there is a disputed issue of material fact as to whether that act by a third party was foreseeable.  *See Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980) (whether intervening action of third party severs causal connection between defendant's conduct and plaintiff's injury turns on whether the action was the normal or foreseeable consequence of the situation created by the defendant's alleged negligence).  Finally, the Albanis' attempt to evade the $50,000 limitation on liability to which they agreed in writing by showing gross negligence likewise raises a disputed issue of material fact.

The Albanis do not even come close to meeting their burden in seeking summary judgment.  In several respects, they do not even try.  Their motion is denied.

C.    Maffucci's Motion

There is no dispute that the Albanis executed a writing purporting to limit Maffucci's liability for loss to the $50,000 valuation they declared for their belongings.  Maffucci now seeks a judgment that their liability is limited to that amount, both by virtue of the legal force of the document the Albanis signed and because the Albanis should be estopped from claiming that

their goods were worth more.  Maffucci Memo. at 7, 15.  As explained below, the disputed

factual issues about Judd Levine's statements to the Albanis precludes such relief.

### 1.     The Written Limitation Of Liability

It is of course settled law that a warehouse, like a shipper, "'may limit its liability for loss

of or damage to stored goods, even if the injury or loss is the result of the warehouse's

negligence, so long as it provides the bailor with an opportunity to increase that potential liability

by payment of a higher storage fee.'"  *Lubell v. Samson Moving & Storage*, 290 A.D.2d 343, 343

(1st Dep't 2002) (quoting *I.C.C. Metals v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 663 (1980)

and citing N.Y. U.C.C. § 7-204).  That rule, however, does not foreclose the possibility that a

triable issue may exist as to whether the documentary evidence fully reflects the parties'

agreement.  *See*, *e.g.*, *General Electric Co. v. Priority Transport Services Inc.*, 215 A.D.2d 827,

830 (3rd Dep't 1995); *Solomon v. National Movers, Co.*, 131 Misc.2d 992, 998 (N.Y. Sup. Ct.

1986) (citing *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103, 108 (1st Cir. 1978); *Caten v.

Salt City Movers & Storage Co.*, 149 F.2d 428, 432 (2d Cir. 1945); and *Chandler v. Aero

Mayflower Transit Co.*, 374 F.2d 129, 135 (4th Cir. 1967)).

Whether the Albanis will be bound by the written liability limitation turns on a disputed

issue of material fact.  In reaching that conclusion, I recognize that there is no dispute that the

Albanis were given detailed documentation about the liability limitation several months before

the move, and that by executing the limitation with a $500 deductible and declaring that their

possessions were worth $50,000 worth of insurance, they significantly lowered the cost of storing

their property pending the move to Florida.  I am also cognizant of the possibility that the

affidavit by which the Albanis seek to create a triable issue of fact may be nothing more than a

self-serving fabrication.  If that affidavit were all that the Albanis relied on, and if it contradicted

their deposition testimony, I could properly grant Maffucci's motion.  *See Hayes v. New York*

*City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) (citations omitted).  But the affidavit

is consistent with the Albanis' deposition testimony, and that suffices.  If the Albanis' disputed

attribution of certain statements to Judd Levine is a fabrication, or even an honest mistake,

Maffucci may well prevail at trial, but I cannot resolve the matter on summary judgment.

In so ruling, I do not rely on the Albanis' contention that Maffucci is foreclosed from

relying on the written limitation of liability under federal law.  Specifically, the Albanis argue

that an applicable federal regulation required Maffucci to provide them with a copy of the

$50,000 insurance policy. Albani Memo. at 14-15; *see* 49 C.F.R. § 375.303(c)(5) ("failure to

issue a policy, or other appropriate evidence of insurance purchased, to an individual shipper will

subject you to full liability for any claims to recover loss or damage attributed to you").

Assuming for the sake of discussion that the provision applies, there is no genuine dispute of fact

as to whether Maffucci complied by providing "appropriate evidence" of the purchased

insurance.  For example (and it is not the only one), the bill of lading that Linda Albani signed on

June 25, 2002 evidences the purchase, and the plaintiffs admit receiving it.  *See* Albani Aff. Ex.

H (Bill of Lading); Albani Rule 56.1 Statement ¶ 17.

2.    Estoppel

In addition to seeking to rely on the written agreement as the source of a binding

limitation on liability, regardless of the actual damages the Albanis suffered, Maffucci also

asserts that the Albanis should be estopped from asserting that those damages exceeded $50,000

because they knowingly put such a value on their property to obtain the lower storage cost.  The

same factual dispute that precludes summary judgment on their first theory also precludes it on their second.

To prevail on its estoppel theory, Maffucci must prove several elements, both with respect to the Albanis and with respect to its own actions:

> The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.  Under New York law, the elements of equitable estoppel are with respect to the party estopped:  (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.  The parties asserting estoppel must show with respect to themselves:  (1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions.

*In re Vebeliunas*, 332 F.3d 85, 93-94 (2d Cir. 2003) (internal citations omitted).  Whether equitable estoppel applies in a given case is ultimately a question of fact.  *Kosakow v. New Rochelle Radiology Assoc.*, 274 F.3d 706, 725 (2d Cir. 2001) (citation omitted).  In this case, that question of fact is in dispute:  if the Albanis' version of the facts is correct, Maffucci's agent Judd Levine did not "lack ... knowledge ... of the true facts."  Accordingly, Maffucci's motion for summary judgment must be denied.

D.     Bekins' Motion

Bekins' argues that it was not involved in the moving and storage of plaintiffs' goods.  Also, Bekins asserts that no bailment relationship existed between plaintiffs and Bekins and that Bekins was not negligent with respect to plaintiffs' goods.  Bekins Memo. at 3-6.  In response, the Albanis assert that Bekins is liable under agency principles, under a joint venture theory, and under 49 U.S.C. § 14706.  Albani Reply Memo. at 2-9.

The moving, storage, and shipment of the Albanis' goods had separate components that implicated two separate sets of laws :  (1) the intrastate shipment and storage, which is governed by New York law; and (2) the interstate shipment, which is governed by federal law.  No evidence in the record suggests that Bekins' interstate shipment of plaintiffs' goods to Florida after the fire at the Maffucci storage facility was the cause of any damage.  The Albanis tacitly admit this point by their repeated attempts to substantiate their claim that the loss of their personal property was caused by the "grossly negligent acts" of an entity known as "Maffucci Bekins" at "its" storage facility.  *See generally* Albani Memo.; Albani Reply Memo.; DE 65.  As a result, the Albanis rely on three different theories to try to make Bekins – with its presumably deeper pocket, but with no actual participation in the events leading to the Albanis' claimed loss – liable for the fire damage.  None of those theories is sufficient on the current record.

      1.    <u>Agency</u>

The Albanis seek to impose liability on Bekins on the ground that Maffucci acted as its agent with respect to the ill-fated storage.  As an initial gambit, their counsel has gamely sought to advance a theory of actual authority, Albani Reply Memo. at 3, but it founders on the unforgiving shoals of fact and law.  The Agency Agreement states that Maffucci is Bekins' agent for "interstate and foreign operations."  Agency Agreement at 1.  The Albanis argue that such a limitation is irrelevant because they were never given a copy of the Agency Agreement, but they do not cite, nor has my own research uncovered, any authority supporting this position.  Accordingly, the plaintiffs' agency theory stands or falls on the doctrine of apparent authority.

There is nothing in the record to suggest that Bekins itself participated in the initial move or storage of the Albanis' property.  Instead, the Albanis claim that Maffucci had apparent

authority to bind Bekins with respect to the move and storage because of the way it held itself out as Bekins' agent. Leaving aside the contested factual issue of the extent to which Judd Levine orally referred to "Maffucci Bekins" in his conversations with the Albanis, there are several documents in the record that create an appearance of such authority. For example, both Judd Levine's letter of December 20, 2001, and Paul Levine's letter of September 16, 2002 letter refer to "Bekins Agent - Maffucci Storage." *See* Albani Aff. Exs. B & J. Similarly, Judd Levine's business card refers to "Maffucci Bekins," and the document that Linda Albani used to purchase packing materials refers to "Bekins-Maffucci Storage Corp." *See id.* Exs. A & F. On the other hand, different documents suggest a separation between the matters for which Maffucci assumed responsibility and those to be handled by Bekins. For example, some brochures refer solely to "Bekins." *See id.* Ex. B. Likewise, Judd Levine prepared two separate inventories of the Albanis' items, one of which was under the "Maffucci Storage" logo and the other of which was under the "Bekins" logo. *See id.* Ex. C. Finally, the June 7, 2002 bill of lading referred only to "Maffucci Storage." *See id.* Ex. H.

If, to survive Bekins' motion for summary judgment, the Albanis needed only to show that there was something in the record that could have conveyed to them, rightly or wrongly, that Maffucci was acting as Bekins' agent for purposes of the initial intrastate move and the storage of their property in North Amityville, they would succeed. The foregoing description of the relevant evidence at a minimum creates a factual issue about what the Albanis were led to believe about the nature of Bekins' role. But that is not sufficient. Instead, the Albanis must show that Bekins was somehow responsible for the dissemination of the information on which they claim to have relied. This they cannot do.

The relevant inquiry is not whether Bekins simply should have known that the Levines were conveying information that suggested Bekins was responsible for storage. The Albanis' counsel sought to rely on such a standard, but it has no basis in the law. Rather, apparent authority requires the principal to have done or said something, or at least to have knowingly acquiesced in something done or said by another, to create the appearance of authority:

> Essential to the creation of apparent authority are words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. "Rather, the existence of 'apparent authority' depends on a factual showing that the third party relied upon the misrepresentation of the agent because of some *misleading conduct on the part of the principal – not the agent*."

*Hallock v. New York*, 64 N.Y.2d 224, 231 (1984) (quoting *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 473 (1973) (emphasis added). To raise a triable issue of fact on the theory of apparent authority, the Albanis would have to point to evidence in the record that Bekins "act[ed] in a manner or acquiesce[d] in acts by its agents which [led the Albanis] to believe that these acts were within the scope of the agent's authority." *Edwards v. North American Van Lines*, 129 A.D.2d 869, 870 (3d Dep't 1987) (citing *Hallock*).

There is no such evidence in this record. All of the documents that arguably created an impression that Maffucci was acting as Bekins' agent for purposes of storage were generated by Maffucci; there is nothing in the record on which a jury could rationally conclude that Bekins either created or acquiesced in the use of such documents. Likewise, nothing about the disputed statements attributed to Judd Levine could serve to establish apparent authority, as an "agent cannot by his own acts imbue himself with apparent authority." *Hallock*, 64 N.Y.2d at 231.

The record in this case is thus distinguishable in a crucial way from that in *Edwards*. In the latter case, the plaintiffs entered into a storage contract with Redman Van & Storage Company ("Redman"), but then failed to pay. After Redman auctioned off the stored property, the plaintiffs filed a conversion action against North American Van Lines ("North American") on a theory that Redman had acted as its agent. *Edwards*, 129 A.D.2d at 869. As with the arrangement in this case, the relevant documents in *Edwards* showed that Redman was North American's agent with respect to interstate shipments but lacked actual authority to bind North American with respect to storage. *Id*. at 870. The court concluded, however, that there was a triable issue of apparent authority because there was "no indication that [North American] or Redman attempted to give notice of the limited nature of the agency relationship" and there was "an affidavit submitted by plaintiffs indicat[ing] that contrary representations were made." *Id*. In contrast, there is no evidence in this case that anyone other than Maffucci employees said or did anything that created an appearance that Maffucci had authority to bind Bekins with respect to storage, and there is evidence that at least some of what the Albanis received did "give notice of the limited nature of the agency relationship." *Id*.[5] Accordingly, the Albanis may not proceed against Bekins on a theory of apparent authority.

2. Joint Venture

The Albanis further assert that Maffucci and Bekins are jointly liable because they operated as a joint venture. I say "assert" advisedly: the plaintiffs include two paragraphs in

---

[5]  To the extent that *Edwards* can be read to allow a plaintiff to survive summary judgment on an apparent agency theory on the basis of words or deeds of the agent alone, it is inconsistent with the controlling authority of *Hallock*, 64 N.Y.2d at 231 (an "agent cannot by his own acts imbue himself with apparent authority"), and must therefore be disregarded.

their motion papers that make the conclusory assertion, *see* Albani Reply Memo. at 7-8, but they did not bother to plead such a theory in their amended complaint, nor did they favor me with any substantive analysis of it in opposing summary judgment, nor even have they noted the existence in the record of any evidence tending to show the existence of a joint venture. In such circumstances, no discussion is warranted, but in the interest of a complete record, I note that the terms of the Agency Agreement in fact forecloses the Albanis' theory. Agency Agreement at 5.

The law does the same. Under New York law, a party must establish five elements to prove that a joint venture exists:

> (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003) (citation omitted); *see also Mendelson v. Feinman*, 143 A.D.2d 76, 77 (2d Dep't 1988) ("[t]he ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one") (citations omitted). The Albanis have done nothing to even attempt to meet this legal standard, and therefore cannot proceed against Bekins on a joint venture theory.

### 3. The Carmack Amendment

The Albanis' final theory of liability against Bekins is asserted under the federal Carmack Amendment, 49 U.S.C. § 14706(a), which regulates the rights and responsibilities of interstate carriers such as Bekins. To the extent the Albanis seek to use the Carmack amendment to keep

Bekins in the case, they appear to argue that Maffucci's storage of their property and the subsequent transport of that property to Florida were components of a single continuous interstate shipment. Albani Reply Memo. at 7. Their Amended Complaint does not plead a cause of action under the Carmack Amendment and their single paragraph on the theory in opposition to summary judgment includes no meaningful legal analysis, which is reason enough to conclude that it cannot defeat Bekins' motion, but I address it nonetheless.

A party making a claim under the Carmack Amendment must prove three elements: delivery to the carrier in good condition; arrival in damaged condition, and resulting damages. *See Project Hope v. M/V IBN Sina*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (citations omitted). Thus, the Albanis' cannot prove the first element as to Bekins unless it can establish that the "delivery" to Bekins is properly viewed as having been the delivery from the Albanis' to Maffucci for purposes of commencing a single continuous shipment to Florida (as opposed to the delivery to Bekins having been the transportation of the damaged property from the storage facility to Bekins' transporters). But the record does not contain evidence to support such a continuous transportation theory; to the contrary, it establishes that the plaintiffs were deliberately *storing* their belongings in New York for several months and then later *shipping* their items to their new home in Brandenton once it was completed. The facts here thus stand in stark contrast to those in *Project Hope*, where multiple shippers handled different legs of the interstate delivery of a shipment of synthetic insulin over a three-day period with no intervening period of storage. *Id*. at 71. Accordingly, on the basis of the record in this case, the Albanis may not prosecute a cause of action against Bekins under the Carmack Amendment.

III.     Conclusion

For the reasons set forth above, the Albanis' motion for summary judgment is denied, as is Maffucci's; Bekins' motion for summary judgment is granted.  As a result, the plaintiffs may proceed to trial and challenge the limitation of liability clause and seek to establish gross negligence, and Maffucci may seek to establish its equitable estoppel defense.

**SO ORDERED.**

Dated:  Central Islip, New York
        September 23, 2005

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge